# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **THOMAS BONDS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 5:22-cv-618-LCB |
| ) | |
| **STATE FARM INS. CO.,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Before the Court is Defendant State Farm Insurance Co.'s Motion for Summary Judgment, (Doc. 27), along with State Farm's motions to exclude expert Ivey Gilmore's opinions, (Doc. 26), strike four exhibits from the Plaintiff Thomas Bonds' opposition to summary judgment, (Doc. 39), and the parties' joint motion to continue their pre-trial and trial-ready deadlines. (Doc. 42).

Because there is no genuine factual dispute that Bonds' loss is excluded from coverage under the insurance policy, the Court **WILL GRANT** State Farm's motion for summary judgment. The Court **WILL DENY AS MOOT** State Farm's motions to exclude and strike as moot because it did not consider that evidence in its decision, and **WILL DENY AS MOOT** the parties' joint motion to continue.

I.      **Background**

When Thomas Bonds built a new home in 2004, he constructed the house with a "composite shingle" roof. (Doc. 27-1 at 4). Beginning in 2011, Bonds insured his roof (and the rest of his home) with State Farm. *Id.* at 8. The roof was not repaired or replaced for sixteen years. *Id.* at 7. In November 2020, however, Bonds noticed a leak in his ceiling. *Id.* at 14. According to Bonds, his daughter's boyfriend patched the leak by applying roofing cement to a section of the roof, but the leak returned in March 2021. *Id.*

Bonds promptly hired a contractor to repair the leak, who told him that the leak was caused by "hail damage" to the roof, provided an estimate to replace the entire roof, and recommended that he file a claim with State Farm. (Doc. 27-1 at 15). Unhappy with the estimate, Bonds sought out a second, third, and fourth opinion, and claims the fourth contractor told him the roof had "extremely bad hail damage." *Id.* at 17. However, that contractor denied that he had any conversations with Bonds about hail damage to the roof. (Doc. 29-2 at 24). Further, the same contractor testified that he could not walk safely onto the roof or confirm what caused the condition of the roof during his initial inspection because it was so worn out. (*Id.* at 19, 21).

On May 7, 2021, Bonds filed a claim with State Farm but listed the "Date of Loss" as March 17. *State Farm Claim File*, (Doc. 28-1 at 3).[1] On May 15, State Farm's independent adjuster inspected Bond's home, inside and out, as well as an adjacent metal shed. (Doc. 28-1 at 7). The adjuster observed that the roof was "in poor condition," but found "wind damage to the front, left, rear slopes." *Id.* The adjuster also reported that "[n]o hail related damage was observed on any of the dwelling slopes." *Id.* Ultimately, the adjuster concluded that just 16 shingles were damaged by wind and prepared an estimate to replace those shingles for $1,443.20. (Doc. 27-7 at 5-6). Because the loss was less than Bonds' deductible, State Farm did not issue a payment on his claim. *Id.* at 2.

Bonds paid out-of-pocket for a new roof in October 2021, (Doc. 27-1 at 23), and sued State Farm in state court on April 7, 2022. (Doc. 1-1). State Farm removed the case to this Court on May 12, 2022, (Doc. 1), and moved for summary judgment on July 14, 2023. (Doc. 27).

## II. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As a practical matter, the party moving for

---

[1] Although Bonds has stated that he first noticed the leak in early November 2020, that the leak returned around "the first of March" 2021, (Doc. 27-1 at 15), State Farm's weather data shows no hailstorms occurred near Bonds' home between July 31, 2020 and March 25, 2021. (Doc. 28-1 at 10).

summary judgment bears the initial burden of proof to "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Furthermore, courts must "tak[e] the facts in the light most favorable to the nonmoving party." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Even so, if the party moving for summary judgment can "demonstrate[] that the facts of record warrant judgment in its favor, the party having the burden of proof at trial must come forward with evidence and argument to sustain that burden." *Am. Safety Indem. Co. v. T.H. Taylor, Inc.*, 513 F. App'x 807, 814 (11th Cir. 2013); *see Celotex*, 477 U.S. at 324 (holding that once the movant satisfies its "initial responsibility," Rule 56(e) "requires the nonmoving party to go beyond the pleadings . . . [to] designate specific facts showing that there is a genuine issue for trial.").

## III. Analysis

### A. Breach of Contract

In Count I, Bonds alleges that State Farm "breached their Policy [agreement] by failing and refusing to pay the benefits as required under the policy of insurance." (Doc. 1-1 at 6). State Farm says it is entitled to summary judgment on this claim because the damage to Bonds' roof was excluded under the plain terms of the Policy. (Doc. 30 at 14). Read charitably, Bonds' retort is that State Farm

believed the damage *was* covered by the Policy at one time, but changed its mind in bad faith to save a buck. (Doc. 37 at 18). That is not enough to defeat State Farm's motion for summary judgment. Even after construing all the evidence in Bonds' favor, it's clear that "[n]o genuine factual dispute exists whether [Bonds'] loss is excluded from coverage under the insurance policy." *Dashtpeyma*, 569 F. App'x at 887.

The parties do not dispute that Alabama law governs this case, which dictates that insurance contracts are "governed by general rules of contract." *Hartford Fire Ins. Co. v. Shapiro*, 270 Ala. 149, 153, 117 So. 2d 348, 352 (1960). And like all other contracts, courts must enforce an "insurance policy as written if the terms are unambiguous." *Safeway Ins. Co. of Alabama v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005).

"The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Dupree v. Peoples South Bank*, 308 So. 3d 484, 490 (Ala. 2020) (quotation marks omitted). Here, Bonds' breach claim hinges on the third element: whether State Farm's refusal to pay for a full roof replacement breached the terms of the Policy.

It did not. The Policy[2] unambiguously excludes coverage of "any loss . . . that consists of, or is directly and immediately caused by . . . wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown." (Doc. 29-1 at 34-35). To be sure, State Farm's adjuster *did* find covered wind damage to Bond's roof, but only 16 shingles worth—not enough to warrant replacing the whole roof. (Doc. 27-7 at 5-6). Nor did the adjuster find any hail damage to Bonds' roof or the metal roof of an adjacent shed similarly exposed to the elements. (Doc. 28-1 at 6).

Instead, the evidence shows that Bonds' roof needed to be replaced because it was worn out. Indeed, State Farm's adjuster (and expert witness)[3] found that Bonds' roof was "approximately 16 years old in poor condition with wear inconsistent with its age"—in other words, Bonds' roof appeared to be even *older* than it was. (*Id.* at 7). The adjuster also found "wind damage to the front, left, [and] rear slopes" of the roof, but "[n]o hail related damage was observed on any of the dwelling slopes." *Id.*

Because State Farm has submitted evidence showing that only 16 shingles of Bonds' roof were damaged by a covered cause, the burden to introduce evidence showing that the policy *did* cover a full replacement shifts back to Bonds. *Am.*

---

[2] The Policy in question was in effect from November 11, 2020, to November 11, 2021. (Doc. 29-1 at 3).
[3] State Farm has disclosed its independent adjuster, Kyle Wallace, as an expert witness. (Doc. 40-1 at 3-4).

*Safety Indem. Co. v. T.H. Taylor, Inc.*, 513 F. App'x 807, 814 (11th Cir. 2013); *Ware v. Nationwide Ins. Co.*, 2013 WL 1680514, at *5 (N.D. Ala.) ("when the defendant has offered evidence showing prima facie that the case is one of specified nonliability, the burden of showing a case within the operation of the policy remains upon the plaintiff.").

Bonds has failed to meet that burden. First, as State Farm points out, Bonds has not objected to or deposed State Farm's expert causation witness, and Bonds does not dispute the fact that his roof was "'old,' in the 'later stage of life,' and was 'worn out.'" (Doc. 40 at 5 n. 2). More importantly, Bonds has not "go[ne] beyond the pleadings . . . [to] designate specific facts showing that" his roof need to be replaced because of damage *caused by* hail or wind. *Celotex*, 477 U.S. at 324.

Instead, Bonds offers the testimony of the roofing contractors who inspected his roof and provided estimates. *See* (Doc. 37 at 5-8). But lay witnesses cannot testify about causation, let alone rebut State Farm's causation evidence. *Ware v. Nationwide Ins. Co.*, 2013 WL 1680514, at *4 (N.D. Ala.). In insurance disputes like this one, expert testimony is required to prove or disprove causation. *Nix v. State Farm Fire & Cas. Co.*, 444 F. App'x 388, 390 (11th Cir. 2011) (holding that non-expert testimony about the cause of a structural collapse was "not admissible as lay testimony."). And with good reason, because "[w]hile a lay witness may be able to recognize and testify about whether a roof is damaged," lay witnesses are

"not capable of reaching an informed conclusion about whether that damage arose due to a product defect, poor workmanship, natural wear and tear, storm damage, or some other cause." *Id.*

Not only that, but "[n]either [Bonds] nor the contractor[s] witnessed the" occurrence of hail damage to the roof personally. *Nix*, 444 F. App'x at 390 (11th Cir. 2011). When asked if he "kn[e]w what caused the leaking in the ceiling," Bonds replied: "No, I don't personally. The only thing I told it was just -- it was hail damage." (Doc. 27-1 at 15).

But Bonds' cannot "attempt to refute [State Farm]'s causation evidence" from an expert witness "with lay witness accounts that" purport to "show the damage/loss is covered under the Policy." *Johnson v. State Farm Fire & Cas. Co.*, 2013 WL 4607548, at *12 (S.D. Ala.); *see McPherson*, 2012 WL 1448049, at *8 ("[t]o avoid summary judgment, the nonmoving party must do more than show that there is some metaphysical doubt as to the material facts.") (citation omitted). Therefore, the Court will grant State Farm's motion for summary judgment on Count I.

### B.  Bad Faith

That brings us to Count II, in which Bonds alleges that State Farm not only breached their agreement but did so in bad faith by (1) refusing to pay for a new roof and (2) intentionally or recklessly failing to investigate his claim. (Doc. 1-1 at

7-8). State Farm is also entitled to summary judgment on this claim, because Bonds has failed to show that State Farm committed a breach of contract.

Alabama law recognizes "refusal-to-pay claims as 'normal' bad-faith claims and to failure-to-investigate claims as 'abnormal' bad-faith claims." *Walker v. Life Ins. Co. of N. Am.*, 59 F.4th 1176, 1186 (11th Cir. 2023). Still, bad faith is a singular tort, so "abnormal" bad faith and "normal" bad faith are not separate torts, but two avenues of proving a bad faith claim. *Id.*

To prove bad faith on a "normal" or failure-to-pay theory, a plaintiff must satisfy "the following essential elements: (1) a breach of an insurance contract; (2) a refusal to pay the claim; (3) the absence of an arguable reason for failing to pay; and (4) the insurer's knowledge of such an absence." *Id.* To prove bad faith on an "abnormal" or "failure-to-investigate" theory, a plaintiff must establish those same four elements, plus a fifth "essential element: the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." *Id.* at 1186-87 (cleaned up).

Bonds' bad faith claim fails as a matter of law, no matter the avenue. Whether normal or abnormal, "the defendant's breach of contract is an essential element" of a bad faith claim. *Kulovitz v. Aspen Specialty Ins. Co.*, 2021 WL 5300929, at *3 (N.D. Ala.). For the reasons explained above, State Farm is entitled to summary judgment on Bonds' breach of contract claim—and because "[w]ithout

breach of contract, there can be no bad faith," Bonds claim cannot survive. *Davis v. State Farm Fire & Cas. Co.*, 2017 WL 4038407, at *11 (N.D. Ala.).

But even if Bonds could prove that State Farm breached their agreement, State Farm would still be entitled to summary judgment. Because the advanced age and wear on the roof provided State Farm with an arguable reason to deny Bonds' claim, "this Court need not look any further." *McLaughlin v. Alabama Farm Bureau Mut. Cas. Ins. Co.*, 437 So. 2d 86, 91 (Ala. 1983).

A bad faith "failure to pay" claim requires a plaintiff to offer more than "a mere showing of nonpayment." *Id.* at 1187. Rather, a plaintiff must show "nonpayment without any reasonable ground for dispute." *Id.* And under Alabama law, "[i]f any one reason for denial of coverage is at least arguable, [a] court need not look any further, and a claim for bad faith refusal to pay will not lie." *Weaver v. Allstate Ins. Co.*, 574 So. 2d 771, 774 (Ala. 1990); *see Shelter Mut. Ins. Co. v. Barton*, 822 So. 2d 1149, 1154 ("[t]he right of an insurer to deny a claim on any arguable legal issue is to be as zealously guarded as is its right to decline benefits on any debatable issue of fact.") (citation omitted).

State Farm has demonstrated that it had arguable reasons to deny Bonds' claim. Bonds does not dispute that State Farm's adjuster inspected the property and prepared an estimate, or that State Farm's adjuster could competently testify as an expert witness on the causes of damage to Bonds' roof. Instead, he only contends

that "these procedures were done [in]correctly," presumably out of financial self-interest. (Doc. 37 at 6). But "Alabama law is clear" that "regardless of the imperfections of the insurer's investigation, the existence of a debatable reason for denying the claim at the time the claim was denied defeats a bad faith failure to pay the claim." *State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 259 (Ala. 2013) (cleaned up).

Here, it's enough that State Farm's adjuster found limited wind damage (a covered risk), no hail damage, and extensive wear-and-tear (an excluded risk) on the roof. *Peoples v. Prop. & Cas. Ins. Co. of Hartford*, 2013 WL 1767796, at *8 (N.D. Ala.) (rejecting bad faith claim where "independent adjustors who examined the damage determined that it was due to normal 'wear and tear' and not storm rain and winds."). Even if the evidence somehow "create[d] a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial," State Farm's presentation of an arguable reason for denial of Bonds' claim means that his normal bad faith claim "must fail and should not be submitted to the jury." *Peoples*, 2013 WL 1767796, at *7 (quoting *Nat'l Sav. Life Ins. Co. v. Dutton*, 419 So.2d 1357, 1362 (Ala.1982)).

Finally, Bonds' abnormal (failure-to-investigate) bad faith claim fails for an independent reason. An "abnormal" bad faith claim requires a plaintiff to prove "the insurer's intentional failure to determine whether there is a legitimate or

arguable reason to refuse to pay the claim." *Walker*, 59 F.4th at 1186-87 (cleaned up). A plaintiff can prove this element by showing that the "insurer (1) intentionally or recklessly failed to investigate the plaintiff's claim; (2) intentionally or recklessly failed to properly subject the plaintiff's claim to a cognitive evaluation or review; (3) created its own debatable reason for denying the plaintiff's claim; or (4) relied on an ambiguous portion of the policy as a lawful basis to deny the plaintiff's claim." *Nat'l Ins. Ass'n v. Sockwell*, 829 So. 2d 111, 129–30 (Ala. 2002).

Bonds asserts that State Farm deliberately failed to adequately investigate his claim "due to" an alleged "company-wide policy to no longer cover hail damage." (Doc. 37 at 9-10). Yet nothing in the record indicates that State Farm's denial of coverage was rooted in a "dishonest purpose," or that State Farm breached its duty of "good faith and fair dealing, through some motive of self-interest or ill will." *Singleton v. State Farm Fire & Cas. Co.*, 928 So. 2d 280, 287 (Ala. 2005). To the contrary, State Farm considered the opinions of an independent expert, satellite and weather data, and photographic evidence before making its decision, and continued to evaluate the claim even after its initial denial. *See* (Doc. 28-1). That is a far cry from intentionally or recklessly failing to investigate, or manufacturing a reason to deny, Bonds' claim. *See Shelter Mut. Ins. Co.*, 822 So. 2d at 1154 (holding that "a finding of bad faith based upon rejection of an insurer's

legal argument should be reserved for extreme cases."). As a result, the Court will grant summary judgment for State Farm on Bonds' bad faith claim.

## IV. Conclusion

For all these reasons, State Farm's Motion for Summary Judgement is **GRANTED.** The Court further **DENIES AS MOOT** State Farm's Motion to Exclude (Doc. 26), State Farm's Motion to Strike (Doc. 39), and the parties' Joint Motion to Continue (Doc. 42). Final judgment will be entered separately.

The Clerk is **ORDERED** to close the case.

**DONE** and **ORDERED** this November 26, 2024.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE